IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**, | Case No. 1:16-cv-00720-CL |
| Plaintiff, | |
| v. | **ORDER** |
| **ADEPT MANAGEMENT, INC., et al.**, | |
| Defendants. | |

CLARKE, Magistrate Judge.

Plaintiff, the Federal Trade Commission ("FTC") brings claims against more than thirty defendants, alleging claims under section 5(a) and section 13(b) the Federal Trade Commission Act, 15 U.S.C. §§ 45(a), 53(b), to obtain preliminary and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies and other equitable relief. The FTC claims that the defendants, who are a large number of corporate entities, groups, and individuals, engaged in a nationwide campaign using misrepresentations to solicit newspaper renewals and new subscriptions from consumers. The case comes before the Court on a motion to withdraw filed by an attorney for a group of the defendants (#112), and two motions to stay the case pending a grand jury investigation into one or more of the defendants (#111, #113). For the reasons below, the motion to withdraw is granted, subject to certain conditions. The motions to stay are denied. Additionally, the motion for disqualification of counsel (#96) is denied as moot.

Page – 1 – ORDER

### I. Attorney Lennon's Motion to Withdraw is Granted with Conditions.

Under Oregon District Court Local Rule 83-11, an attorney may withdraw as counsel of record only with leave of the court. In considering a motion to withdraw from representation, courts consider a variety of factors, including: (1) the reasons why withdrawal is sought; (2) the prejudice withdrawal may cause to other litigants; (3) the harm withdrawal might cause to the administration of justice; and (4) the degree to which withdrawal will delay the resolution of the case. *Sidbury v. Boeing*, 2015 WL 11714358, at *2 (W.D. Wash. June 24, 2015) (citing *Bohnert v. Burke*, 2010 WL 5067695 (D. Ariz. 2010)).

Application of this multi-factor test leads the Court to conclude that withdrawal should be allowed, with conditions. First, the reasons given for withdrawal are serious. Attorney David P. Lennon, counsel of record for seven individual defendants and over twenty corporate defendants, moves to withdraw based on potential or actual conflicts of interest arising from Mr. Lennon's connections and interactions with the defendants in this case – both his clients and other co-defendants. Co-defendants Dennis Simpson and Reality Kats, LLC, are former clients of Lennon, and they have filed a third-party complaint against Lennon in this action, as well as a motion to disqualify him as counsel. Additionally, Mr. Lennon submits that these defendants have filed a bar complaint in the State of Oregon, a lawsuit in a California court, and most recently a new action in the Jackson County Circuit Court.

Second, the only prejudice to the other litigants will be mitigated by the conditions, as discussed below. Third, any harm to the administration of justice will also be remedied by the conditions. Fourth, the Court is hopeful that the conditions will prevent any substantial delay that would otherwise be caused by immediate withdrawal.

As pointed out by Plaintiff FTC, Mr. Lennon has been the sole counsel for seven individual and twenty three corporate defendants for over nine months. He has worked with these parties for years, and he is familiar with the underlying conduct at issue, the structure of the corporate entities, the relationships among the defendants, and the location of key documents subject to discovery. The Court agrees that the conditions imposed on Attorney Lennon's withdrawal will help to minimize the inevitable delay that will be result as his clients seek representation, and the potential halting of the process altogether if the corporate defendants are unable to retain counsel. Mr. Lennon has already agreed to several of these conditions in his Reply brief, but the Court will include all of them here for purposes of clarity.

**Pre-conditions for Withdrawal:**

1. Mr. Lennon will continue to temporarily serve as counsel, and:

    a. He will file amended affirmative responses on behalf of his clients, as ordered by the Court on December 21, 2016 (#94), which were due on January 27, 2017. This shall be filed no later than March 3, 2017.

    b. He will respond to the requests for production of documents served on his clients, which are due March 17. As indicated in his Reply Brief, Mr. Lennon is aware of the existence and the location of the Company Group Defendants' documents and copies of hard drives. The Court sees no reason why he cannot make these available to the Plaintiff for copying and inspection before he withdraws.

    c. If he has not already done so, Mr. Lennon will immediately provide the initial disclosures for his clients, which were due February 17.

2. Mr. Lennon will submit an affidavit to the Court and provide satisfactory assurance that he has complied with the conditions above. If the Court approves his submission, he will be allowed to withdraw immediately.

**Post-conditions for Withdrawal:**

3. No later than two days after he is permitted to withdraw, Mr. Lennon must advise his corporate clients in writing that he no longer represents them in this action and that they have 30 days to obtain new counsel and have counsel file a notice of appearance, otherwise default may be entered against them.

4. No later than two days after he is permitted to withdraw, Mr. Lennon must advise his individual clients in writing that he no longer represents them in this action and that must either retain new counsel or represent themselves pro se.

5. No later than four days after he is permitted to withdraw, Mr. Lennon must file with the Court and serve on all parties a notice containing the physical address, mailing address for service, telephone number, and email address, for each of his clients.

II.   **Defendants' Motions to Stay are Denied.**

The Court previously stayed this case to allow the defendants to evaluate their potential liability in a related criminal case, which was at the grand jury investigatory stage. The stay was lifted on January 27, 2017, to allow the case to move forward with discovery and other case deadlines. Defendants Jeffery Hoyal, Lori Hoyal, and Hoyal & Associates, Inc ("Hoyal Defendants") now move to stay the case pending resolution of the criminal proceedings that have been initiated in the United States District Court for the District of Oregon. In the alternative, they move to stay the Hoyal Defendants' obligation to respond to discovery in this case. The individual and corporate defendants represented by Mr. Lennon also move to stay the case, citing

similar concerns of a parallel federal criminal investigation, and the fact that at least one of the defendants has been called to testify at before a grand jury. For the reasons below, while the Fifth Amendment privilege can be invoked by any individual defendant, it cannot be invoked by any corporate entity. Considering this, and the other Keating factors, the Court finds that a stay is not appropriate at this time.

### a. The Fifth Amendment Privilege can be invoked by any individual defendant, but it does not apply to any corporate defendant.

The Fifth Amendment provides that "[n]o person shall be . . . compelled in any criminal case to be a witness against himself." That privilege protects a person from being compelled to testify in any proceeding—including civil proceedings—when the answers may incriminate the person in a future criminal prosecution. *See, e.g., Maness v. Meyers*, 419 U.S. 449, 464 (1975) (reaffirming the principle, in the context of a civil case, that "the privilege against self-incrimination can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory" (internal quotation marks omitted)). The privilege pertains not only to inquiries that would be directly incriminating, but also "embraces those which would furnish a link in the chain of evidence" needed to prosecute a crime. *Hoffman v. United States*, 341 U.S. 479, 48 (1951).

The privilege can also extend to protect against the act of production in circumstances where the production of documents has a "protected testimonial aspect[ ]," *United States v. Hubbell*, 530 U.S. 27, 36 n. 19, (2000) (internal quotation marks omitted). In order to be testimonial, "an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information." *Doe v. United States*, 487 U.S. 201, 210 (1988). Such an act of production may communicate such statements of fact, where, for example, "[b]y producing documents in compliance with a subpoena, the witness would admit that the papers existed, were

Page – 5 – ORDER

in his possession or control, and were authentic." *Redwine v. Starboard, LLC*, 240 Or. App. 673, 684–85, 251 P.3d 192, 198 (2011).

By contrast, the Supreme Court has long recognized that, "for purposes of the Fifth Amendment, corporations and other collective entities are treated differently from individuals." This doctrine, known as the collective entity rule, has a lengthy and distinguished pedigree. *Braswell v. United States*, 487 U.S. 99, 104 (1988) (discussing the history and expansion of the rule). In reasoning one expansion of the rule, the Court reasoned:

> In view of the inescapable fact that an artificial entity can only act to produce its records through its individual officers or agents, recognition of the individual's claim of privilege with respect to the financial records of the organization would substantially undermine the unchallenged rule that the organization itself is not entitled to claim any Fifth Amendment privilege, and largely frustrate legitimate governmental regulation of such organizations.

*Bellis v. United States*, 417 U.S. 85, 90 (1974). Indeed, since *Bellis*, the Court has confirmed unequivocally that "the custodian of corporate records may not interpose a Fifth Amendment objection to the compelled production of corporate records, even though the act of production may prove personally incriminating." *Braswell*, 487 U.S. at 111–12.

In this case, the Court finds that the Fifth Amendment Privilege applies to any and all of the individual defendants that may be subject to criminal investigation, and each individual defendant is entitled to exercise the privilege whenever a response "might lead to incriminating evidence" even if the response itself is not inculpatory. *Hubbell*, 530 U.S. at 38. This includes answers to interrogatories and deposition questions and to the production of any private papers or records. The privilege does not apply, however, to the production of any business papers or corporate records, even if those records might be incriminating to one or more of the individual defendants.

Page – 6 – ORDER

### b. The factors weigh against granting the motion to stay.

The Constitution does not ordinarily require a stay of civil proceedings pending the outcome of related criminal proceedings. *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir.1995.) It is constitutionally permissible for a defendant to have to choose between testifying in a civil matter and asserting his Fifth Amendment privilege. *Id.* While a stay is an "extraordinary remedy that should be granted only when justice so requires," *Chao v. Fleming*, 498 F.Supp.2d 1034, 1037 (W.D.Mich.2007), a court may decide in its discretion to stay civil proceedings when the interests of justice require it. *Federal Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899 (9th Cir.1989).

In deciding whether to stay civil proceedings in light of parallel criminal proceedings, courts consider six factors: (1) the extent to which the defendant's Fifth Amendment rights are implicated; (2) the plaintiff's interests in proceeding expeditiously and potential prejudice resulting from a delay; (3) judicial efficiency; (4) the interests of nonparties; and (5) the public's interests in the pending civil and criminal litigation. *Keating*, 45 F.3d at 324–25.

First, several of the individual defendants' Fifth Amendment rights are implicated. This is demonstrated by the grand jury subpoenas served on a number of the individual defendants represented by Mr. Lennon, and the fact that one defendant has already testified before the grand jury and was asked about the operation of the direct mail business at issue in this case. Additionally at least one recipient of the grand jury subpoenas has received a "target letter" stating that the grand jury has developed substantial evidence linking that person to the commission of federal crimes. By contrast, however, Plaintiff claims that the focus of the grand jury investigation is the use of trust entities to file fake tax returns, which differs from the case

here, involving the operation of a deceptive newspaper subscription scheme. FTC also points to the lack of an indictment in any case.

It seems clear to the Court that there could be substantial overlap between the criminal case and the case at bar, if there is not already. However, no indictment has issued, and it's unclear if one ever will be issued, raising questions as to how long a stay would have to be in place to satisfy the defendants. Finally, as discussed above, none of the corporate defendants enjoy the Fifth Amendment Privilege, and therefore those non-existent rights cannot be implicated in this situation. The corporate defendants make up a large portion of the whole group of defendants and the alleged actions in this case, regardless of whether or not those businesses are still functioning.

The Fifth Amendment rights of the individual defendants are implicated in this case, but the rights of the corporate defendants are not. Therefore this factor therefore weighs in favor of granting a stay, but it does not weigh heavily.

Second, the Court finds that Plaintiff has a strong interest in proceeding expeditiously in this case. While the defendants point to a lack of urgency shown by a lack of motions for temporary restraining orders and preliminary injunctions, the FTC has been diligently prosecuting this case and pursing discovery. Courts have recognized that a civil plaintiff has an interest in having her case resolved quickly. *See S.E.C. v. Loomis*, 2013 WL 4543939, at *2 (E.D.Cal. Aug. 27, 2013). Further it would be prejudicial to Plaintiff to force it to wait until the unknown culmination of a criminal case, for which no indictment has even been issued.

Third, courts have recognized that the *Keating* factor that considers judicial efficiency normally does not favor granting a stay, because "the court has an interest in clearing its docket." *Molinaro,* 889 F.2d at 903. "Staying a civil case until the resolution of a criminal case is

inconvenient for the court, especially where . . . there is no date set for the criminal trial. *ESG Capital Partners LP v. Stratos*, 22 F. Supp. 3d 1042, 1047 (C.D. Cal. 2014). Here, no indictment has issued, and no date has been set for trial. Thus, this factor consequently weighs against the defendants' requested stay.

Fourth, the interest of non-parties, if there are any in this case, weigh against granting the stay. Plaintiff's case is an enforcement action, brought for the purpose of protecting the public from acts and practices that the FTC claims have victimized consumers. While the merits of the case will be litigated at a later stage, the allegations of the Complaint place the interest of non-parties squarely in favor of proceeding expeditiously. Fifth, the public interest weighs against granting the stay for the same reasons discussed above.

After considering the *Keating* factors expounded by the Ninth Circuit, the Court finds that only the first factor weighs in favor of a stay while all of the others are either neutral or favor denying the stay. Therefore the motion to stay is denied. *See ESG Capital Partners LP v. Stratos*, 22 F. Supp. 3d 1042, 1045 (C.D. Cal. 2014) (denying a motion to stay when only the first factor weighs in favor of the motion, even when a grand jury indictment had already been returned against the defendant.)

## ORDER

For the reasons above, the motion to withdraw (#112) is granted, subject to certain conditions. The motions to stay (#111, #113) are denied. The motion for disqualification of counsel (#96) is denied as moot.

IT IS SO ORDERED AND DATED this __23__ day of February, 2017.

_____
MARK D. CLARKE
United States Magistrate Judge