Krista K. Bush, WSBA 30881
kbush@ftc.gov
Laura M. Solis, WSBA 36005
lsolis@ftc.gov
Connor B. Shively, WSBA 44043
cshively@ftc.gov
Richard McKewen, WSBA 45041
rmckewen@ftc.gov
Federal Trade Commission
915 Second Ave., Suite 2896
Seattle, WA 98174
Phone: 206-220-6350
Fax: 206-220-6366
Attorneys for Plaintiff
Federal Trade Commission

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**, <br> Plaintiff, <br><br> v. <br><br> **ADEPT MANAGEMENT, INC., et al.**, <br> Defendants, | Case No: 1:16-cv-00720-CL <br><br> **PLAINTIFF FEDERAL TRADE COMMISSION'S RESPONSE IN OPPOSITION TO THE HOYAL DEFENDANTS' MOTION TO BIFURCATE** |

Plaintiff Federal Trade Commission ("FTC" or "Commission") respectfully requests the Court deny the Motion to Bifurcate [Doc. 226] and enter a Case Scheduling Order appropriate for an October 2018 trial on this matter. Bifurcation is improper when – as here – the issues are not so distinct and separate that they can be addressed separately without prejudice to any party; bifurcation will also result in unnecessary delay and burden on Court and party resources.

1

PLAINTIFF FTC'S RESPONSE IN OPPOSITION TO THE HOYAL DEFENDANTS'
MOTION TO BIFURCATE

As outlined in the FTC's Complaint [Doc. 1], since at least 2010, through a complicated and ever-changing web of companies, Defendants have disseminated direct-mail "Notice of Renewal/New Order" marketing mailers for newspaper subscriptions to consumers. These mailers contain representations that are false or misleading, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits "unfair or deceptive acts or practices in or affecting commerce." The issue of whether Defendants' mailer was likely to deceive consumers cannot be separated from the context of how Defendants' operation was structured and conducted and any limitation on the FTC's ability to present relevant, necessary evidence concerning this context would be prejudicial. Although the Hoyal Defendants argue that all evidence of the inter-relatedness of Defendants' subscription operation goes only to the issue of relief [Doc. 226 at 3], this evidence is equally relevant to determination of liability in the first instance and cannot be excluded without prejudice to the FTC. The amount of funds paid by consumers also is relevant to whether any misrepresentations in the mailers were material. As the same evidence is relevant and necessary to consideration of all aspects of liability and relief, bifurcation would only result in increased delay and burden because the same evidence would need to be presented in each phase of the trial.

This is particularly apparent given that the Hoyal Defendants' Motion does not propose that the Court bifurcate the trial into issues of liability and remedy, but instead to artificially separate the issue of "whether the mailers were false and misleading" from all other related issues of liability and relief [Doc. 226 at 8] and after this "relatively simple" issue is decided, the Court "may then hold a second trial on the issues of damages" [*Id.* at 9]. This proposal grossly oversimplifies the issues of liability in this case and would result in an impractical staging of trial that would result in prejudice to the FTC, inefficient use of resources by the parties and the Court,

PLAINTIFF FTC'S RESPONSE IN OPPOSITION TO THE HOYAL DEFENDANTS'
MOTION TO BIFURCATE

and unnecessary delay before the matter is finally adjudicated.[1] This open-ended proposal also threatens to burden the case with unclear deadlines and uneven discovery obligations.

I.   BACKGROUND

The FTC filed this case on April 27, 2016, nearly two years ago. At issue is Defendants' scheme that deceived consumers into paying Defendants over $25 million, which included a significant undisclosed markup, for more than 40,000 newspaper subscriptions that they were not authorized to sell.[2] According to numerous consumer complaints, Defendants' mailers deceived consumers into believing that Defendants were newspaper publishers or were authorized to sell newspaper subscriptions. Defendants' mailers also deceived consumers into believing that they owed money for existing subscriptions, that the newspaper subscriptions were "automatic," and that consumers who sent payment to Defendants would receive newspaper subscriptions at a price offered or authorized by the publishers. Defendants perpetrated this scheme individually and through a maze of interrelated business entities that shared ownership and control, management, business premises, marketing materials, and finances. Mr. Hoyal and Mr. Simpson partnered together to direct and control the operation and worked with the other Individual Defendants, under the auspices of the various Corporate Defendant entities, to carry out the actions necessary to the operation's day to day activity.

---

[1] Bifurcation of all liability issues from relief would also result in unnecessary delay and waste of resources because evidence of Defendants' structure, operation, and inter-relatedness is equally relevant to liability and relief and would involve the same duplication of time and effort  *See, e.g., FTC v. Grant Connect, LLC*, 763 F.3d 1094, 1105 (9th Cir. 2014); ("Where corporate entities operate together as a common enterprise, each may be held liable for the deceptive acts and practices of the others."); *FTC v. Washington Data Resources*, 856 F.Supp.2d 1247, 1272 (M.D. Fl. Apr. 23, 2012) ("an act by one entity constitutes an act by each entity comprising the "common enterprise."), *aff'd,* 704 F.3d 1323 (11th Cir. 2013).

[2] The FTC does not adopt the characterization of issues or statement of facts contained in Doc. 226.

PLAINTIFF FTC'S RESPONSE IN OPPOSITION TO THE HOYAL DEFENDANTS'
MOTION TO BIFURCATE

## II.  AUTHORITY

The Court has authority under Rule 42(b) to order a separate trial of one or more issues or claims for "convenience, to avoid prejudice, or to expedite and economize" the proceedings. Fed. R. Civ. P. 42(b). The decision to bifurcate proceedings is within the sound discretion of the district court. *See Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004); *Jinro Am. Inc. v. Secure Investments, Inc.*, 272 F.3d 1289 (9th Cir. 2001). In determining whether to bifurcate, the court should consider the convenience of the parties, prejudice to the parties, judicial economy, reducing the risk of confusion, and separability of the issues. *Bishop v. Oregon*, 2003 WL 24002420, *3, No. Civ. 03-138-CO (D. Or., Aug. 21, 2003)(citing *Angelo v. Armstrong World Industries, Inc.*, 11 F.3d 957, 964-965 (10th Cir. 1993)). As recently noted by the Honorable John Acosta, "[t]he drafters of the Federal Rules did not intend the routine bifurcation of trials." *Van Patten v. Washington County*, 2017 WL 2616888, Case No. 3:15-cv-0891-AC, *1 (D. Or., June 16, 2017) (citing the advisory committee's note to the 1966 amendment to Rule 42(b)); *Ryan v. City of Salem*, 2017 WL 2426868, *1, Case. No. 3:16-cv-0565-AC (D. Or., June 5, 2017).

The moving party has the burden to prove that bifurcation "will promote judicial economy or avoid inconvenience or prejudice to the parties." *Karpenski v. American General Life Companies*, 916 F.Supp.2d 1188, 1190 (9th Cir. 2012) (citing *Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D 99, 1010 (N.D. Cal. 1992)). *See also Benson Tower Condo. Owner's Ass'n v. Victaultic Co.*, 105 F.Supp.3d 1184, 1208 (D. Or. 2015) (citing *Clark v. IRS*, 772 F.Supp.2d 1265, 1269 (D. Haw. 2009).  "Bifurcation is inappropriate when the issues are so intertwined that separating them would create confusion to the trier of fact."  *Karpenski*, 916 F.Supp.2d at 1189, citing *Miller v. Fairchild Industries, Inc.*, 885 F.2d 498, 511 (9th Cir. 1989). *See also Bishop v. Oregon*, 2003 WL 24002420, *3 (noting bifurcation is improper if the issue[s]

are not separable and that, to be separable "the issue to be tried must be so distinct and separate from the others that a trial of it alone may be held without injustice.") (citing *Guedry v. Marino*, 164 F.R.D. 181, 186, Civ. A. No. 92-4009 (E.D. La., Nov. 20, 1995)).[3]

## III. ARGUMENT

The Court should deny the Hoyal Defendants' Motion to bifurcate the liability issues in this case into multiple, separate trials. The Court has already bifurcated discovery in this case into two phases in the interest of judicial economy. Further bifurcation in this manner would be wholly impractical and would not result in measurable gains in convenience or economy, but would prejudice the FTC's ability to present evidence, waste judicial and party resources, and unnecessarily delay the resolution of this case contrary to the purpose of Rule 42(b).

### A. Evidence concerning the operation of the scheme is relevant and necessary to the issue of liability.

The question of whether Defendants' mailer was likely to deceive consumers is inextricably linked with how the Defendants' scheme operated. Thus, any limitation on the FTC's ability to present relevant, necessary evidence concerning the operation of the scheme would be prejudicial to the presentation of its case. "An act or practice is deceptive if 'first, there is a representation, omission, or practice that, second, is likely to mislead consumers acting reasonably under the circumstances, and third, the representation, omission, or practice is material.'" *FTC v. AMG Services, Inc.*, 29 F.Supp.3d 1338, 1349 (D. Nev. 2014), quoting *FTC v. Gill*, 265 F.3d 944, 950 (9th Cir. 2001)(internal citations omitted). Actual deception is not required for a Section 5 violation, only a showing that the misrepresentations at issue "possess a tendency to deceive." *Id.*, citing *Trans World Accounts, Inc. v. FTC*, 594 F.2d 212, 214 (9th Cir. 1979) and *FTC v.*

---

[3] As the *Guedry* Court shrewdly noted, when denying a Rule 42(b) Motion, "[t]o allow seven individual trials on essentially the same, if not identical, issue could cause this matter to go on forever, case after case. Such would be reminiscent of Dante's Ninth Circle." *Guedry v. Marino*, 164 F.R.D. at 186.

*Commerce Planet, Inc.*, 878 F.Supp.2d 1048, 1073 (C.D. Cal. 2012). In making this determination, "the Court considers 'the overall, common sense 'net impression' of the representation or act as a whole to determine whether it is misleading,' and a Section 5 violation may still be found even if the fine print and legalese were technically accurate and complete." *Id.*, citing *Commerce Planet*, 878 F.Supp.2d at 1063. *See also FTC v. Cyberspace.com LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006) (a representation "may be likely to mislead by virtue of the net impression it creates even though the [representation] also contains truthful disclosures").

In determining whether the Defendants' deceptive mailer is likely to mislead consumers, the Court must consider evidence about the Defendants' scheme, including the history, relationships, and interrelated operations of the enterprise. The FTC's evidence that the mailer was deceptive will not only include consumer, publisher, and expert testimony about the effect of the language of the mailer itself on consumers, but also the operation of scheme. The FTC intents to show that the mailer was the product of the Defendants' operation and that multiple Defendants were involved in its design and development; had input into revisions to the design and text; directed dissemination of the mailer to specific consumers and for specific publications; and reviewed and approved the mailer "proofs" before they were printed and distributed to consumers. The mailer and the Defendants' operation have also been the subject of numerous attempts by consumers, publishers, and law enforcement agencies to stop the Defendants from misleading consumers, which the Court should consider.

In other words, the same evidence that demonstrates how Defendants' operated together in concert – including the development, content, and distribution of the mailers; and the formation, operation, management, and direction of the mailing entities, the processing entities, and the clearing entities – also demonstrates (1) how and why the representations made by the mailers are

6

PLAINTIFF FTC'S RESPONSE IN OPPOSITION TO THE HOYAL DEFENDANTS'
MOTION TO BIFURCATE

deceptive; (2) how and why each Defendant is liable for violating the FTC Act; (3) how Defendants operated as a common enterprise and should be jointly and severally liable; (4) why injunctive relief is appropriate for each Defendant; and (5) why monetary relief is appropriate for each Defendant. As the evidence relevant to each of these issues – and to each of the Defendants – is so necessarily interwoven, bifurcation is inappropriate.

### B. The FTC cases cited by the Hoyal Defendants do not support bifurcation under these circumstances.

Courts routinely decide liability issues together in FTC cases. As one Court noted in denying a Rule 42(b) motion brought by one group of defendants in a multi-defendant FTC case to sever the case against them, bifurcation may require witnesses to be deposed twice, may require witnesses to testify repeatedly, and will require additional Court time. *FTC v. Johnson*, 2011 WL 6140157, *2, Case No. 2:10-cv-02203-RLH-GWF (D. Nev. Dec. 7, 2011).[4] This is particularly true here, as issues concerning whether the mailers were deceptive, individual and joint liability, and relief are inextricably related and would have to be re-litigated at every state of the proceeding.

The Hoyal Defendants point to two FTC cases – *AMG Services* and *Minutemen Press* – for the proposition that "[i]t is not uncommon in FTC cases for a court to bifurcate issues of liability from damages. Doc. 226 at 8. Neither case, however, supports bifurcation under these circumstances. In *AMG Services*, the parties stipulated to a preliminary injunction and bifurcation. *FTC v. AMG Services, Inc.*, 29 F.Supp.3d 1338, 1346 (D. Nev. 2014). In *Minutemen*, the Court bifurcated the issues of liability and injunctive relief from the issue of consumer redress, which is a different scenario than that suggested by the Hoyal Defendants. *See FTC v. Minuteman Press*, 53 F.Supp.2d 248, 251 (E.D.N.Y. 1998).

---

[4] The *Johnson* Court also noted that bifurcation was not necessary to avoid confusion of issues because the case was a bench trial. *Id.*

7

PLAINTIFF FTC'S RESPONSE IN OPPOSITION TO THE HOYAL DEFENDANTS'
MOTION TO BIFURCATE

### C. Bifurcation would unnecessarily delay the proceedings and waste resources.

Bifurcation will only delay these proceedings. Under the Hoyal Defendants' proposal, bifurcation would add yet a third discovery phase to this litigation that would only begin after a trial on the very narrow issue of the whether the mailer is deceptive. Proceeding forward on all issues in dispute is the most expeditious – and efficient – course of action. Moreover, bifurcation will not save resources. Defendants have only begun to take discovery. The Hoyal Defendants have propounded requests for discovery to the FTC, to which the FTC has responded and is continuing to respond. No other Defendants have made any discovery requests to the FTC's knowledge; however, the FTC has provided its discovery responses to all Defendants.

The evidence the FTC intends to present on the issue of whether the mailers are likely to mislead consumers includes: (1) evidence, including deposition testimony and exhibits, about the development, revision, and use of the mailers, including the design, content, and dissemination; (2) complaint information regarding the over 5,000 consumer complaints received by the FTC about the Defendants' operation; (3) complaint information regarding consumers who complained to local law enforcement agencies, the Better Business Bureau or Defendants directly;[5] (4) consumer testimony about their impressions from Defendants' mailers, their communications with Defendants, and the fact that they would not have paid Defendants if they had realized that the mailers were not from the newspapers printed on the mailers;[6] (5) newspaper publisher testimony concerning the complaints publishers received from consumers about Defendants' mailers and the number of consumers who were misled by Defendants' mailers;[7] (6) testimony about other related

---

[5] The FTC has provided Defendants with consumer complaints made to other law enforcement agencies, the Better Business Bureau, and collected by the FTC from Defendants' storage unit.

[6] The FTC has provided Defendants with declarations from consumers describing their impressions from the Defendants' mailers and their communications with Defendants.

[7] The FTC has provided Defendants with declarations from newspapers publishers describing the complaints they have received from consumers, the number of consumers who were misled by Defendants'

litigation brought by the U.S. Postal Service, other law enforcement agencies, and publishers, involving Defendants' operation and mailers;[8] (7) expert testimony that the design and text of the mailers is likely to confuse consumers into believing they are sent by newspaper publishers;[9] (8) testimony of former employees of Defendants about their impressions of the mailers (including that they "looked like a bill"), communication with publishers about the mailers, and communications with consumers who thought the mailers were bills;[10] and, (9) evidence, including deposition transcripts and exhibits, regarding the structure, management, control, and inter-relatedness of the individual and corporate Defendants, sufficient to demonstrate that the Corporate Defendants are all operated, managed, and controlled by the same core group of Individual Defendants. While the FTC has provided information about all of these categories of evidence – as well as copies of most of these documents – the FTC anticipates that Defendants will need to conduct discovery on these issues.[11]

### D. The Hoyal Defendants have not demonstrated that bifurcation is appropriate.

The Hoyal Defendants argue that bifurcation will be beneficial because: (1) the FTC must prove Defendants' conduct constituted unfair or deceptive acts or practices in violation of the FTC

---

mailers, and the attempts the publishers have taken to stop Defendants from sending mailers purporting to sell subscriptions to their publications, as well as copies of communications from newspaper publishers to Defendants collected by the FTC from Defendants' storage unit.

[8] The FTC has provided Defendants with documents filed in other cases involving Defendants' mailers, dating from 1996 to the present.

[9] As an example, the publisher of the Columbus Dispatch filed an Affidavit of Deborah Mitchell, an expert on marketing, who reviewed the Defendants' mailers purporting to sell the Columbus Dispatch. She opined, "… it is my opinion to a reasonable degree of professional certainty that there is a high likelihood of confusion to a consumer who receives the purported invoice which appears to be either from The Dispatch or an entity affiliated with or sponsored by The Dispatch." Ms. Mitchell identifies twelve (12) discrete elements of the mailer that contribute to this confusion, before concluding "[t]he invoices are designed to and do effectively deceive and confuse the consumer into believing they are sent by or on behalf of The Dispatch and that payment is due and owing by the consumer." A true and correct copy of Ms. Mitchell's Affidavit filed in that litigation is appended hereto as Attachment A.

[10] The FTC has provided declarations of Defendants' former employees addressing these, and other, points.

[11] The FTC provided Amended Initial Disclosures to all Defendants on January 29, 2018.

9

PLAINTIFF FTC'S RESPONSE IN OPPOSITION TO THE HOYAL DEFENDANTS'
MOTION TO BIFURCATE

Act; (2) the FTC must prove its case for restitution and disgorgement; and (3) the FTC has identified in its December 2, 2016 initial disclosures 203 witnesses with knowledge of relevant facts. Doc. 226, ¶9.[12] Yet, the evidence relevant and necessary to the FTC's case on the first two identified points – which encompass liability, injunctive relief, and monetary relief – substantially overlaps and any attempt at artificial separation of the issues will result in prejudice, duplication of efforts, unnecessary expense, delay, and confusion, making bifurcation inappropriate. Further, the Defendants' assertion that the calculation of consumer injury requires tracing is simply incorrect. *See FTC v. Commerce Planet, Inc.*, 815 F.3d 593, 601 (9th Cir. 2016) (tracing requirements for restitution do not apply in FTC Act cases brought under § 13(b)).

## IV.    PROPOSED CASE SCHEDULING ORDER

In sum, the FTC agrees that a speedy resolution of this matter is appropriate, but submits that bifurcation will result in prejudice to the FTC, cause confusion, create unnecessary delay and inefficiently use judicial resources. Therefore, the FTC suggests the following trial schedule that would accommodate all parties' desire to see this matter resolved quickly:

| **Trial (5 week court trial)** | **October 2, 2018** |
|---|---|
| **Pretrial Conference** | **September 24, 2018** |
| **Dispositive Motions Due** | **August 3, 2018** |
| **Close of Expert Discovery** | **July 16, 2018** |
| **Expert Rebuttals** | **June 15, 2018** |
| **Status Conference** | **June 1, 2018** |
| **Initial Expert Disclosures** | **May 15, 2018** |
| **Close of Fact Discovery** | **May 1, 2018** |
| **Discovery Motions Due** | **April 2, 2018** |

---

[12] Although the FTC has identified a significant number of individuals with knowledge of relevant facts, Defendants have had the FTC's December 2, 2016 initial disclosures for over a year and, with the exception of the four identified FTC employees, each of the identified individuals is a Defendant or has performed work directly for Defendants, so was already known to Defendants. The mere number of individuals listed in this document does not mean that an un-bifurcated trial would be unwieldy. Instead, as noted above, forcing potential witnesses to potentially re-testify at each stage of a bifurcated proceeding would be more burdensome and a greater waste of judicial resources.

PLAINTIFF FTC'S RESPONSE IN OPPOSITION TO THE HOYAL DEFENDANTS'
MOTION TO BIFURCATE

Respectfully submitted,

Dated:   February 2, 2018         By:   s/Krista K. Bush
                                        Krista K. Bush, WSBA 30881
                                        Laura M. Solis, WSBA 36005
                                        Connor B. Shively, WSBA 44043
                                        Richard McKewen, WSBA 45041
                                        Attorneys for Plaintiff Federal Trade Commission
                                        915 2nd Ave., Suite 2896
                                        Seattle, WA 98174
                                        Telephone: (206) 220-6350

PLAINTIFF FTC'S RESPONSE IN OPPOSITION TO THE HOYAL DEFENDANTS'
MOTION TO BIFURCATE

CERTIFICATE OF SERVICE

      I hereby certify that I am employed by the Federal Trade Commission, 915 Second Avenue, Suite 2896, Seattle, WA 98174, and that pursuant to FRCP Rule 5(b), a copy of Plaintiff FTC's Response in Opposition to the Hoyal Defendants' Motion to Bifurcate was served as follows:

By ECF on each of the following:

Laura M. Solis
lsolis@ftc.gov
Richard McKewen
rmckewen@ftc.gov
Connor Shively
cshively@ftc.gov
Federal Trade Commission
915 Second Avenue, Suite 2896
Seattle, WA 98174

David B. Paradis
dparadis@brophylegal.com
Brophy Schmor LLP
201 W. Main Street, 5th Floor
Medford, OR 97501

Kevin W. Bons
kbons@beckley-law.com
Beckley & Bons, P.C.
66 Club Road, Suite 360
P.O. Box 11098
Eugene, OR 97440

Tyler J. King
Tyler@lawgroupfs.com
The Franklin Square Law Group
1225 Eye Street NW, Ste. C-110
Washington, DC 20005

Colleen M. Kaylor
Cmarie0322@yahoo.com
308 Live Oak Loop
Central Point, OR 97502

Laura Lovrien
ljlovrien@embarqmail.com
7610 Torrey Pines Ter.
Eagle Point, OR 97524

James E. Magleby
magleby@mcgiplaw.com
Eric K. Schnibbe
schnibbe@mcgiplaw.com
Adam Alba
alba@mcgiplaw.com
170 S. Main Street, Ste. 1100
Salt Lake City, UT 84101

Shannon Bacon
sbrenee@gmail.com
Kirchoff Law Offices
231 NW B. Street
Grants Pass, OR 97526

Lydia Pugsley
Lydia@abdinc.biz
4293 West Main St.
Medford, OR 97501

12

PLAINTIFF FTC'S RESPONSE IN OPPOSITION TO THE HOYAL DEFENDANTS' MOTION TO BIFURCATE

By email and mail addressed to the address provided in Document 149 to the following:

Linda Babb
Gmamma910@gmail.com
440 Chateau Drive
Eagle Point, OR 97524

Noel Parducci
lovemyfourlittleones@gmail.com
103 Monterey Drive
Medford, OR 97504

William Strickler
Bilofo541@gmail.com
2989 Thompson Creek Rd.
Jacksonville, OR 97530

                                                s/Krista K. Bush
                                                Krista K. Bush, WSBA 30881
                                                915 2nd Ave., Suite 2896
                                                Seattle, WA 98174
                                                Telephone: (206) 220-6350
                                                Attorney for Plaintiff Federal Trade Commission

PLAINTIFF FTC'S RESPONSE IN OPPOSITION TO THE HOYAL DEFENDANTS'
MOTION TO BIFURCATE