IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | Civ. No. 1:16-cv-00720-CL |
| Plaintiff, | |
| | **OPINION AND ORDER** |
| v. | |
| **ADEPT MANAGEMENT INC., et al,** | |
| Defendants. | |

CLARKE, Magistrate Judge.

This case comes before the Court on Plaintiff FTC's motion for summary judgment (#348), as well as the motions for summary judgment filed by the defendants (##320, 321, 323, 325, 327, 329, 333, 339, 341, 342). As discussed below, the FTC's motion is GRANTED in part and DENIED in part. The defendants' motions are DENIED. Plaintiff's motions to strike (##416, 449) and Hoyal defendants' motion to strike (#410) are all DENIED. The case will proceed to trial on the issues of common scheme, individual liability, and remedy.

## DISCUSSION

### I. Plaintiff FTC is entitled to summary judgment on the issue of facial deceptiveness.

Section 5 of the Federal Trade Commission Act prohibits "deceptive acts or practices in or affecting commerce." FTCA § 5(a)(1), 15 U.S.C. § 45(a). As the Ninth Circuit Court of

Page – 1 – ORDER

Appeals has explained, a practice falls within this prohibition: (1) if it is likely to mislead consumers acting reasonably under the circumstances (2) in a way that is material. *FTC v. Gill*, 265 F.3d 944, 950 (9th Cir.2001) (citing *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095 (9th Cir.1994)). Deception may be found based on the "net impression" created by a representation, and a solicitation may be likely to mislead by virtue of the net impression it creates even though the solicitation also contains truthful disclosures. *F.T.C. v. Cyberspace.Com LLC*, 453 F.3d 1196, 1199–200 (9th Cir. 2006). A misleading impression created by a solicitation is material if it "involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Cliffdale Associates, Inc.*, 103 F.T.C. 110, 165 (1984).

Courts, including the Supreme Court, have uniformly rejected imposing a requirement on the FTC to provide extrinsic evidence to show deceptiveness. *Kraft, Inc. v. F.T.C.*, 970 F.2d 311, 319 (7th Cir. 1992) (citing *Colgate-Palmolive*, 380 U.S. at 391-92) (FTC not required to conduct consumer surveys before determining that a commercial has a tendency to mislead); *see also F.T.C. v. Bronson Partners, LLC*, 564 F. Supp. 2d 119, 126 (D. Conn. 2008) ("Even if an advertisement makes a claim by implication, extrinsic evidence is not always necessary.") When evaluating the net impression of an advertisement, it is necessary "to consider the advertisement in its entirety and not to engage in disputatious dissection. The entire mosaic should be viewed rather than each tile separately." *Bronson Partners, LLC*, 564 F. Supp. 2d at 125 (citing *FTC v. Sterling Drug, Inc.*, 317 F.2d 669, 675 (2d Cir.1963)). The consumer "does not ordinarily carefully study or weigh each word in an advertisement. The ultimate impression upon the mind of the reader arises from the sum total of not only what is said but also of all that is reasonably implied." *Id.*

        a.        **The mailer is deceptive as a matter of law.**

In this case, the newspaper subscription mailer[1] is deceptive as a matter of law, based on the net impression that the mailer is either from or authorized by the newspaper publication in question, that any current subscription would be "renewed" automatically, and that the consumer was being offered the lowest price available. The mailers create this impression by including a single newspaper's name in several prominent positions in bold and capital letters, by suggesting a connection with consumers' existing subscriptions, and by using a similar format to a routine invoice or renewal service.

In contrast to the visibility and repetition of the newspaper's title, the full name of the defendants' dbas typically appears only once in the mailers. The dba name itself is generic-sounding and implies that the dba is a service or a department within the named newspaper's organization, such as "Reader's Payment Service" or "Publisher's Payment." The payment-return envelope defendants included with the mailer contributes to this impression and disguises the true payment recipient by bearing only the words: "ATTN: Mail Processing Department."

The net impression that the mailer is either from or authorized by the newspaper is also created by the suggestion that it is connected to a consumer's existing subscription. The word "Renewal" is featured prominently, more than once, and the mailer refers to the consumer's "regular subscription" and a purported deadline to return payment. It offers an "installment" option, implying that the consumer can arrange to pay the full subscription cost in more than one payment during the subscription period. Additionally, the formatting of the mailer implies that it is an invoice or renewal service. It includes a payment stub with framed boxes showing a "Control Number," and a "Total Amount," along with the due date and installment payment amount. Nothing on the mailer indicates that it is an advertisement.

---

[1] A copy of the representative mailer, as provided in the FTC's Complaint as Exhibit A, is attached to this opinion and order. The Court notes for the record that the representation has been enlarged for reviewing purposes, and the actual mailers sent to consumers are smaller than the one attached.

Finally, the mailer makes other statements that are confusing at best, and wholly false at worst. "Your subscription to [THE NEWSPAPER] is automatic with receipt of your payment when you choose to renew or order a new subscription." Undisputed evidence submitted by the FTC demonstrates that the defendants would attempt to fill a subscription after receiving full payment from the consumer. Thus, rather than being "automatic," subscriptions were actually not even guaranteed to be filled. The mailer also states,

> Fortunately, by acting now, you can lock in one of our lowest rates! **You're receiving one of the lowest available rates we can offer for your regular subscription**.

(Emphasis in original.) While the defendants point out that this is technically true, due to the qualifying words, "one of," and, "we can offer," the statements undeniably imply that the consumer is getting the best deal available, when in fact the price is significantly higher than it would be if ordering through the newspaper itself. The fact that the mailer gives the impression that the consumer is ordering through the newspaper itself compounds the misleading nature of this representation.

### b. The disclaimers are not adequate to cure the mailer's deceptiveness.

If an advertisement's net impression is deceptive, "disclaimers or qualifications in any particular ad are not adequate to avoid liability unless they are sufficiently prominent and unambiguous to change the apparent meaning of the claims and to leave an accurate impression." *Removatron Int'l Corp. v. F.T.C.*, 884 F.2d 1489, 1497 (1st Cir. 1989). "Anything less is only likely to cause confusion by creating contradictory double meanings." *Id.* (citing *Giant Food, Inc. v. FTC*, 322 F.2d 977, 986 (D.C.Cir.1963), *cert. dismissed*, 376 U.S. 967 (1964)).

In this case, the purported disclaimers included on the mailer are confusing and inadequate to cure the deception. First, small words on the bottom of the mailer state "Renewal

Offer – Not a Bill." This statement continues to imply that the offer is a renewal, and thus connected to their regular subscription and sent from the newspaper publisher. The helpful part of the statement, "Not a Bill," does nothing to clarify this issue.

Second, the block of text on the reverse side of the mailer is confusing and unlikely to be read by the consumer. The text refers to magazine subscriptions, not newspapers, and a reasonable consumer would likely believe it to be inapplicable to their particular newspaper subscription. The language states that the defendants "do not necessarily have a direct relationship with the publishers or publications" offered. This leaves open the possibility that the defendants actually do have a relationship with the newspaper, when in fact they do not.[2]

Finally, the text states, "This is a magazine subscription offer, not a bill or an invoice. You are under no obligation to either buy a magazine or renew at this time." This language once again is confusing because it relates to magazines, not newspapers. Even if it were not confusing, it would be ineffective because it is buried in the middle of a block of text, with no prominent placement or distinguishing features.

### c. Consumer complaints confirm the mailers were likely to, and did, mislead reasonable consumers.

As discussed above, the FTC is not required to produce extrinsic evidence of actual deception, but "such proof is highly probative to show that a practice is likely to mislead consumers acting reasonably under the circumstances." *Cyberspace.com*, 453 F.3d at 1201. Here, the FTC has produced numerous consumer complaints showing that the mailers actually deceived consumers. Thousands of consumers complained about defendants' mailers to law

---

[2] Defendants attempt to raise an issue of fact regarding whether they have "authority" to submit subscriptions either to the newspapers in question or to clearing houses in order to fill the orders they receive, after the consumer sends the defendants the payment. Regardless of this issue, however, the defendants have not raised a question as to whether or not they have an on-going, direct relationship, as implied by the mailers. It is undisputed in the record that they do not have such a relationship.

Page – 5 – ORDER

enforcement, the Better Business Bureau, publishers, and to the defendants themselves. Newspapers also received thousands of complaints, and Dow Jones, the publisher of the *Wall Street Journal*, issued a fraud alert.

The Hoyal defendants have filed a motion to strike these consumer complaints as hearsay (#410). This motion is denied. Federal Rule of Evidence 807 states:

> Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804 if:
> a)
>   1. the statement has equivalent circumstantial guarantees of trustworthiness;
>   2. it is offered as evidence of a material fact;
>   3. it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
>   4. admitting it will best serve the purposes of these rules and the interests of justice.
> b) Notice. The statement is admissible only if, before the trial or hearing, the proponent gives an adverse party reasonable notice of the intent to offer the statement and its particulars, including the declarant's name and address, so that the party has a fair opportunity to meet it.

The defendants dispute only the first requirement. The Court has reviewed the complaints and find that they meet the circumstantial guarantees of trustworthiness, including 1) the fact that they all reported roughly similar experiences, 2) that they were submitted by unrelated members of the public in different cities and states, 3) that they were made proximate to the time the mailers were received, and 4) that there is a low risk that the complaints are the product of faulty perception, memory or meaning, the dangers against which the hearsay rule seeks to guard. *See, e.g., FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 608 (9th Cir. 1993); *FTC v. AMG Servs., Inc.*, No. 2:12-cv-00536-GMN-VCF, 2014 WL 317781, at *16 (D. Nev. Jan. 28, 2014). In addition, even though not raised by the defendants, the Court finds all other requirements of Rule 807 are met.

While the Court does not find that the consumer complaints are dispositive of the issue, they are probative, and they tend to support the Court's conclusion that the net impression of the mailer is deceptive.

### d. The misrepresentations were material.

As discussed above, a misleading impression created by a solicitation is material if it involves information that is important to consumers and likely to affect their choice of or conduct regarding a product. In this case the misleading net impressions are that the mailers came from the newspaper being marketed, that any current subscription would be "renewed" automatically, and that the consumer was being offered the lowest price available. These are misrepresentations regarding source and price – two crucial pieces of information when purchasing a product and highly likely to affect consumers' choice and conduct regarding their newspaper subscription. The misrepresentations were therefore material.

### e. *2004 Consent General Judgment*

Defendants argue that the 2004 Consent General Judgment ("2004 Judgment") prevents this Court from holding that the mailers at issue are deceptive. They claim that the 2004 Judgment functioned as an agreement between the parties and the State of Oregon as to what language would acceptable for future mailers, and that the defendants "were required" to use the language specified. Paragraph 16 of the 2004 Judgment states:

> Defendants shall, or shall continue, to provide consumers (inside or outside Oregon) being solicited by them by mail to purchase a magazine subscription or subscriptions with substantially the same information and explanations (with the exception of possible differing dba company name and address changes and the specific information about the subscription or subscriptions being solicited) in all future mailings sent to consumers, in as clear and conspicuous form or clearer, as set out on the attached two-sided mail piece in Exhibit 1 which is incorporated by reference. Defendants shall continue to provide in contrasting red and in the

same font size on the front side of their mailers as shown in Exhibit 2 the phrase "NOTICE OF RENEWAL / NEW ORDER." In addition, on the front side of the two-sided document shown in Exhibit 1, defendants shall also provide in a clear and conspicuous way in at least 7 point font and in contrasting red color at the bottom the phrase "INDEPENDENT AGENT NOT A BILL KEEP THIS PORTION FOR RECEIPT OF OFFER." If a customer has purchased a subscription from defendants and defendants seek to offer a renewal of that subscription, the phrase "NOTICE OF RENEWAL" may be used by defendants in lieu of "NOTICE OF RENEWAL / NEW ORDER.

The Court is unpersuaded by the defendants' arguments. First, the mailer does not comply with the requirements set out in Paragraph 16. The words "INDEPENDENT AGENT" do not appear on the front of the mailer in any font size or color, let alone in contrasting red.

Second, Paragraph 8 of the 2004 Judgment states:

> Defendants shall not imply that that plaintiff [the State of Oregon] approves of defendants' past business practices, current efforts to reform their practices, or any future practices defendants adopt. Plaintiff's settlement of this case does not constitute approval for past, present, or future business practices.

The defendants' argument is thus inapposite to the plain language of the judgment itself.

Third, defendants' arguments about the 2004 Judgment ignore the existence of subsequent litigation between these same parties and the State of Oregon. In 2015, the Marion County Circuit Court entered an Assurance of Voluntary Compliance ("2015 AVC"), essentially shutting down the defendants' business and entering a permanent injunction. Paragraph 12 of the 2015 AVC states the prohibited conduct under the injunction:

> Each Respondent is permanently prohibited from engaging in any or all of the following conduct:
> . . .
> c) From engaging in the magazine or newspaper subscription business. This includes the sale of newspaper or magazine subscriptions, conducting business as a subscription clearing house, and using, purchasing, renting or leasing any customer list from any third party.

It is unclear to the Court how the defendants can rely on the 2004 Judgment to show that the State of Oregon "approved" of their practices, when the same state brought the subsequent case against them, leading to the permanent injunction.

Finally, regardless of all of the above, nothing about the prior litigation or other background circumstances of this case changes the Court's legal analysis of the net impression given by the mailers at issue. The mailers are deceptive.

### f. All motions to strike expert reports are denied as moot.

The Court has determined that the mailers at issue are deceptive on their face, as a matter of law. Each side submitted expert reports to bolster their arguments for why the mailers are or are not deceptive. The Court did not find these expert opinions to be helpful to its analysis. Therefore, because the Court does not rely on any of these opinions, the motions to strike are moot and the Court need not consider whether they are admissible for summary judgment purposes.

### g. Conclusion

The net impression of the mailers at issue is that they are deceptive on their face because they are likely to mislead a reasonable consumer in a way that is material to their purchase of the product. The FTC's motion for summary judgment is GRANTED as to this issue.

## II. Plaintiff FTC's other motions for summary judgment and the defendants' motions for summary judgment are all denied.

The FTC has submitted overwhelming evidence in support of their motions for summary judgment on the issues of common enterprise, individual liability, and the remedies of permanent injunction and monetary relief. It is likely that the defendants, particularly Jeffery Hoyal, Hoyal and Associates, Dennis Simpson, and Reality Kats, Inc., were involved in a common scheme to

mislead consumers and profit from their confusion. It is likely that these defendants, and possibly some others, can be held jointly and severally liable for this deception. However, the defendants have submitted declarations and affidavits in support of their own motions as well. The Court is cognizant of its role at summary judgment, which is not to weigh the evidence or make findings of fact. This role must be reserved for trial. Therefore, all of these motions are denied.

## ORDER

Plaintiff FTC's motion for summary judgment (#348) is GRANTED in part and DENIED in part. The defendants' motions (##320, 321, 323, 325, 327, 329, 333, 339, 341, 342) are DENIED. Plaintiff's motions to strike (#416, 449) are DENIED. The Hoyal defendants' motion to strike (#410) is DENIED. The case will proceed to trial on the issues of common scheme, individual liability, and remedy.

It is so ORDERED and DATED this ____ day of September, 2018.

MARK D. CLARKE
United States Magistrate Judge